ADAMS LAW GROUP, LTD.
JAMES R. ADAMS, ESQ.
Nevada Bar No. 6874
ASSLY SAYYAR, ESQ.
Nevada Bar No. 9178
8681 W. Sahara Ave, Suite 280
Las Vegas, Nevada 89117
Tel: 702-838-7200
Fax: 702-838-3636
james@adamslawnevada.com
*Attorneys for Plaintiffs*

PUOY K. PREMSRIRUT, ESQ., INC.
Puoy K. Premsrirut, Esq.
Nevada Bar No. 7141
520 S. Fourth Street, 2nd Floor
Las Vegas, NV 89101
(702) 384-5563
(702)-385-1752 Fax
ppremsrirut@brownlawlv.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NICHOLAS OTOMO, an individual; TIMOTHY MCCRIGHT, and individual, on behalf of themselves and all those similarly situated, | Case No.: 2:10cv-02199-LRH-GWF |
| Plaintiffs, | **PLAINTIFF TIMOTHY MCCRIGHT'S MOTION FOR PRELIMINARY INJUNCTION ON ORDER SHORTENING TIME; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| NEVADA ASSOCIATION SERVICES, INC., a Nevada corporation; and DAVID STONE, an individual, | |
| Defendants. | |

COMES NOW Plaintiff TIMOTHY MCCRIGHT, by and through Adams Law Group and Puoy K. Premsrirut, Esq., Inc., his attorneys of record, and hereby submits his Motion for Preliminary Injunction on Order Shortening Time; Memorandum of Points and Authorities. The following Motion is based on the memorandum of points and authorities below, the First Amended Verified Class Action Complaint (#6), the Declaration of Timothy McCright, the Declaration of James R. Adams, Esq., the exhibits attached to the First Amended Verified Class Action Complaint, all pleadings and paper on file herein, and any oral argument this Court may request or permit.

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

Pursuant to a Notice of Foreclosure Sale (#6 at Ex. 24, "NFS") Defendants (who are the collection and foreclosure agents of Willow Tree Homeowners' Association) threaten to hold a homeowners' association lien foreclosure sale to foreclose upon Plaintiff McCright's real property located within the Willow Tree Homeowners' Association (the "Subject Property"). The foreclosure sale has been continued to February 4, 2011 (see Declaration of James R. Adams filed concurrently herewith at Ex. 1). The NFS allegedly arises from unpaid homeowners' association assessments. The NFS states the amount owed by Plaintiff McCright is $2,629.67. However, Plaintiff McCright has already paid current any and all association fees due and owing by him to his homeowners' association, Willow Tree Homeowners' Association (hereinafter Willow Tree "HOA"), and is in good standing with Willow Tree HOA (see Declaration of Timothy McCright filed concurrently herewith). Indeed, in a letter dated October 8, 2010, even the Willow Tree HOA affirms that, "... Tim McCright, a homeowner at Willowtree Condominiums... is an owner in good standing with the Willow Tree Homeowners Association. As of October 1, 2010, he has a zero balance in regard to his monthly assessments and/or fines accrued." ("10/8/10 Letter," Ex. 1 attached hereto). Irrespective of the fact that Willow Tree HOA is not making any claim against Plaintiff McCright who is an owner in "good standing," Defendant, Nevada Association Services (a collection and foreclosure agency) threatens to foreclose anyway. Plaintiff McCright prays this Honorable Court will stop this unjust action.

Defendants appear to be foreclosing on Plaintiff McCright's home because Defendants claim Plaintiff McCright owes them "collection fees." However, Willow Tree HOA, the only party that can foreclosure upon a homeowners' property for unpaid assessments, has determined Plaintiff to be in good standing. The following facts should be noted:

- On February 13, 2009, Defendant sent to Plaintiff McCright a letter stating that he was delinquent in his homeowners' association assessments (#6 at Ex. 5). The letter stated, "If you want to resolve this matter before a Notice of Default Assessment Lien is recorded and sent to you pursuant to Nevada Revised Statutes, you must, within 10

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

days of this letter, pay the balance due.... Should you decide not to pay within the 10 day period, this office will be entitled to proceed with the preparation and recordation of the Notice of Delinquent Assessment Lien."

- On March 2, 2009, Defendant recorded a document titled "Notice of Delinquent Assessment Lien" (#6 at Ex. 9);

- On March 25, 2009, Defendants sent a letter to Plaintiff McCright informing him they would "soon proceed with a non-judicial foreclosure action" if Plaintiff did not pay his back due assessments (#6 at Ex. 21);

- On April 2, 2009, Plaintiff McCright sent a letter to Defendants stating he would agree to make payments of $50.00 per month to make up his back due assessments (Ex. 2 attached hereto);

- On April 12, 2009, Plaintiff McCright sent a second letter to Defendants stating he had not heard back from Defendants regarding his offer to pay $50.00 per month toward his past due assessments (Ex. 3 attached hereto);

- On July 2, 2009, Defendants sent Plaintiff McCright a letter proposing Plaintiff McCright pay $462.00 per month to make up his past due assessments (#6 at Ex. 11). Defendant's July 2, 2009, letter failed to mention any fee that would be charged for the payment plan. Plaintiff's signature was requested if he agreed to the terms. Plaintiff McCright did not sign the payment plan agreement letter;

- Regardless of the fact that Plaintiff did not sign the offer letter nor agree to the payment plan, on July 20, 2009, Defendants sent a letter to Plaintiff McCright stating, "As you know, you have breached the terms of the previously agreed upon payment plan... If you fail to remit payment within 5 days... this office will be forced to proceed with the non-judicial foreclosure action." (#6 at Ex. 15).

- Plaintiff McCright sent a letter to Defendants stating that $50.00 was all he could afford and that the association community management company had agreed to accept the $50.00 per month (Ex. 4 attached hereto);

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

ADAMS LAW GROUP, LTD.
8861 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- On August 13, 2009, Defendant sent Plaintiff McCright a letter proposing Plaintiff McCright pay $200.00 per month to make up his past due assessments (#6 at Ex. 12). Defendant's August 13, 2009, letter failed to mention any fee that would be charged for the payment plan. Plaintiff's signature was requested if he agreed to the terms. Plaintiff McCright did not sign the payment plan agreement letter;

- Regardless of the fact that Plaintiff did not sign the offer letter nor agree to the payment plan, on August 31, 2009, Defendants sent a letter to Plaintiff McCright stating, "As you know, you have breached the terms of the previously agreed upon payment plan... If you fail to remit payment within 5 days... this office will be forced to proceed with the non-judicial foreclosure action." (#6 at Ex. 16);

- Despite Plaintiff McCright having never signed any payment plan agreement or agree to any fee for a payment plan, and despite Defendants failing to inform Plaintiff that any fee would be due for a payment plan, in December of 2009 Defendant charged Plaintiff McCright $300.00 for a "Payment Plan Fee" (#6 at Ex. 18);

- On January 4, 2010, once again Defendants sent Plaintiff McCright a letter proposing Plaintiff McCright pay $462.00 per month to make up his past due assessments (#6 at Ex. 13). Defendant's January 4, 2010, letter failed to mention any fee that would be charged for the payment plan. Plaintiff's signature was requested if he agreed to the terms. Once again Plaintiff McCright did not sign the payment plan agreement letter;

- On January 7, 2010, Plaintiff McCright sent Defendants a letter stating, "We received your payment schedule and we reject it." (Ex. 5 attached hereto).

- On January 19, 2010, Defendant unilaterally increased the un-consented, surreptitious "Payment Plan Fee" (for a payment plan that was never agreed to) from $300.00 to $450.00. Other unexplained fees included a $150.00 "Misc Charge" and a $50.00 "Statutory Filing Fee." Further, Plaintiff McCright was charged $325.00 for the filing of the Notice of Delinquent Assessment Lien and, even though the account had not been fully paid, $30.00 for preparing the "Lien Release" (#6 at Ex. 19);

- On February 22, 2010, Plaintiff McCright "paid in full" the remaining $592.50 of past due assessments bringing his account current (Ex. 6 attached hereto);

- On March 25, 2010, Defendants produced a spreadsheet showing that Plaintiff McCright had no past due assessments. The spreadsheet showed only the collection fees claimed by Defendants against Plaintiff McCright (Ex. 7 attached hereto).

Despite Plaintiff McCright having already paid current any and all association fees due and owing by him to Willow Tree HOA and despite being in "good standing" with the Willow Tree HOA Defendant, Nevada Association Services, has not (after request) withdrawn its foreclosure auction of the Subject Property. A preliminary injunction should issue preventing any foreclosure by Defendants on the Subject Property during the pendency of these proceedings. Absent such relief, Plaintiff McCright will lose his house to foreclosure over a debt that is invalid and false. Given Willow Tree HOA's acknowledgment that Plaintiff McCright is a owner is "good standing," and given Plaintiff's financial inability to pay the phantom "unpaid balance," only a nominal bond should issue. Thereafter, a preliminary injunction should issue precluding any foreclosure on the Subject Property until such time as this case is resolved.

## II.

### LEGAL STANDARD

"The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 13 F.Supp.2d 1064, 1072 (D.Nev.,1998) *quoting Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). As "every request for injunctive relief is different [ . . .] a "court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."" *Id. quoting Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). "The Ninth Circuit requires a plaintiff seeking a preliminary injunction to show either a combination of probable success on the merits and the possibility of irreparable harm, *or* the existence of serious questions as to the merits and that the balance of hardships tips sharply in plaintiff's favor." *Id.* (emphasis in the original). "If the

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

threat of injury is real, injunctive relief is appropriate." *Morgan v. Nevada Bd. of State Prison Com'rs*, 593 F.Supp. 621, 624 (D.C.Nev.,1984). If a party can show "[a]n imminent threat of foreclosure" that party has shown the likelihood of irreparable harm. *Perpetual Bldg. Ltd. Partnership v. District of Columbia*, 618 F.Supp. 603, 616 (D.C.D.C.,1985).

## III.

## ARGUMENT

**A.   PURSUANT TO FRCP 65, A PRELIMINARY INJUNCTION SHOULD ISSUE AS THERE IS A POSSIBILITY OF EXTREME AND IRREPARABLE HARM THAT PLAINTIFF WILL SUFFER ON FEBRUARY 4, 2010, ABSENT THIS RELIEF.**

As set forth in the First Amended Verified Class Action Complaint, the Declaration of Timothy McCright and the Declaration of James R. Adams, Esq., there is a clear possibility of immediate and irreparable loss. A foreclosure sale on the Subject Property is currently set for February 4, 2011. Efforts to convince Defendants' counsel to terminate the auction have failed (see Declaration of James R. Adams, Esq., and Ex. 1 attached to the said Declaration). If the foreclosure sale occurs, Plaintiff McCright will be deprived of his real property. Indeed, he will lose title to the only real property he owns. He will lose a valuable asset that is unique in the world. This is immediate and irreparable loss. *Perpetual Bldg. Ltd. Partnership v. District of Columbia* , 618 F.Supp. 603, 616 (D.C.D.C.,1985) (Imminent threat of foreclosure which would result in loss of owner's only asset constituted irreparable harm for purposes of determining its entitlement to a preliminary injunction). As courts have ruled:

> The loss of one's personal residence due to foreclosure constitutes irreparable injury. *See, Avila v. Stearns Lending, Inc.* , No. CV 08-0419-AG(CTx), 2008 WL 1378231, *3 (C.D.Cal. Apr.7, 2008) ("Plaintiffs cite many cases for the proposition that '[l]osing one's home through foreclosure is an irreparable injury.' *See, e.g., Wrobel v. S.L. Pope & Associates*, [No. 07CV1591 IEG (BLM) ], 2007 WL 2345036, *1 (S.D. Cal. June 15, 2007). Plaintiffs also point out that they will lose their right to rescission under 15 U.S.C. § 1635(f) if their home is foreclosed upon. The Court agrees. 'The imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm.' *Nichols v. Deutsche Bank Nat. Trust Co.*, [Civil No. 07cv2039-L(NLS) ], 2007 WL 4181111, *3 (S.D.Cal. Nov. 21, 2007). Plaintiffs have shown the possibility of irreparable injury if the preliminary injunction does not issue"). Because defendants will almost certainly proceed with the trustee's sale if not enjoined from doing so, plaintiff has demonstrated a likelihood of irreparable harm. *Demarest v. Quick Loan Funding, Inc.,* 2009 WL 940377 C.D.Cal.,2009

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

1

2

Therefore a preliminary injunction should issue given the possibility of immediate threat of irreparable harm and the fact that efforts to terminate the foreclosure during the pendency of this case have failed.

3

4

**B.    PLAINTIFF HAS DEMONSTRATED A "PROBABLE" LIKELIHOOD ON THE SUCCESS ON THE MERITS, OR AT THE VERY LEAST THE "EXISTENCE OF SERIOUS QUESTIONS AS TO THE MERITS" AND THEREFORE THIS HONORABLE COURT SHOULD ENTER A PRELIMINARY INJUNCTION.**

5

6

**1.    Plaintiff McCright has a Zero Balance and is in Good Standing with Willow Tree HOA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Pursuant to NRS §116.3116, Willow Tree HOA has a statutory lien against units within its association. The lien can consist of assessments, fines, collection costs and other fees. Under Nevada Revised Statutes §116.31162, Willow Tree HOA can foreclose its statutory lien against a homeowner's unit for nonpayment of past due amounts claimed by the association through lien foreclosure proceedings. Thus, perhaps the most obvious reason why there is a probability that Plaintiff McCright will succeed on the merits is because the creditor, Willow Tree HOA, confirmed that Plaintiff is a homeowner in good standing. In its 10/8/2010 Letter, Willow Tree HOA confirmed that, "... Tim McCright, a homeowner at Willowtree Condominiums... is an owner in good standing with the Willow Tree Homeowners Association. As of October 1, 2010, he has a zero balance in regard to his monthly assessments and/or fines accrued." (Ex. 1). The creditor, Willow Tree HOA, therefore does not claim Plaintiff McCright is delinquent in any assessments, but does claim he is in good standing. Because Plaintiff is in "good standing," the creditor, Willow Tree HOA, therefore, claims no past due assessments or collection fees or costs. Regardless, Defendants proclaims on the Notice of Foreclosure Sale that $2,629.67 is owed by Plaintiff McCright. That representation is simply false. Plaintiff owes nothing to Willow Tree HOA, the only entity that can foreclose for a homeowners' failure to pay assessments.

23

**2.    Defendants Have No Right to Foreclose Non-Judicially for the Amount Stated in the Notice of Foreclosure Sale**

24

25

26

27

Pursuant to 15 U.S.C.A. § 1692e(5), a debt collector cannot threaten to take any action that cannot legally be taken. Pursuant to 15 U.S.C.A. § 1692f(6) a debt collector may not take any nonjudicial action to effect dispossession of property if "there is no present right to possession of the property claimed as collateral through an enforceable security interest...." 15 U.S.C.A. § 1692f(6).

28

Even if Plaintiff McCright did owe collection fees and costs to Willow Tree HOA (which even Willow Tree HOA admits he does not), the amount of fees demanded by Defendants are incorrect and not permitted by law.

For example, on February 13, 2009, Defendant sent to Plaintiff McCright a letter stating that he was delinquent in his homeowners' association assessments. The letter stated, "If you want to resolve this matter before a Notice of Default Assessment Lien is recorded and sent to you pursuant to Nevada Revised Statutes, you must, within 10 days of this letter, pay the balance due.... Should you decide not to pay within the 10 day period, this office will be entitled to proceed with the preparation and recordation of the Notice of Delinquent Assessment Lien." (#6 at Ex. 5).

It should first be noted that although Defendants suggested that the Notice of Delinquent Assessment Lien was a lien, the document was, in fact, not a lien, but merely a notice. The Notice of Delinquent Assessment Lien was not a lien because pursuant to NRS 116.3116(4), "Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required." Thus, the mere filing and recording of the Willow Tree HOA CC&RS constituted record notice and perfection of a homeowners' association lien. Pursuant to NRS 116.3116(4), the Notice of Delinquent Assessment Lien did nothing to legally "lien" Plaintiff's property as no further recording of any claim of lien for assessment under NRS 116 was required.

Secondly, Defendants stated in the 2/13/2009 letter (#6 at Ex. 5) that the Notice of Delinquent Assessment Lien could be recorded pursuant to Nevada Revised Statutes (and that Defendants were "entitled" to record it) when there is no Nevada Revised Statute that permits the recording of such a document. Pursuant to NRS §116.31162, only the mailing to a unit owner of a notice of delinquent assessment is required to begin the foreclosure process.

> NRS 116.31162  Foreclosure of liens: Mailing of notice of delinquent assessment; recording of notice of default and election to sell; period during which unit's owner may pay lien to avoid foreclosure; limitations on type of lien that may be foreclosed.
>
> 1. Except as otherwise provided in subsection 4, in a condominium, in a planned community, in a cooperative where the owner's interest in a unit is real estate under NRS 116.1105, or in a cooperative where the

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

1
2

owner's interest in a unit is personal property under NRS 116.1105 and the declaration provides that a lien may be foreclosed under NRS 116.31162 to 116.31168, inclusive, <u>the association may foreclose its lien by sale after all of the following occur:</u>

3
4
5
6

(a) <u>The association has mailed by certified or registered mail, return receipt requested, to the unit's owner or his or her successor in interest, at his or her address, if known, and at the address of the unit, a notice of delinquent assessment</u> which states the amount of the assessments and other sums which are due in accordance with subsection 1 of NRS 116.3116, a description of the unit against which the lien is imposed and the name of the record owner of the unit.

7 Thus, pursuant to NRS 116.31162, the notice of delinquent assessment is a "notice," to be mailed to
8 the homeowner and not a "lien" as represented by Defendants. Apparently in order to increase their
9 own fees, Defendants cleverly renamed the "notice of delinquent assessment" to "Notice of Delinquent
10 Assessment <u>Lien</u>" for which they could charge extra. Defendants stated in their 2/13/2009 letter,
11 "Should the Notice of Delinquent Assessment Lien be prepared and recorded, the additional cost to
12 you will be $325.00 plus recording and mailing costs." As Defendants had no legal right to record the
13 Notice of Delinquent Assessment Lien, they had no legal right to charge for it. To add insult to injury,
14 Defendants actually charged Plaintiff McCright $30.00 to prepare a "release" of the Notice of
15 Delinquent Assessment Lien that should have never been filed in the first place. Moreover, Defendants
16 charged Plaintiff McCright $57.00 for recording costs when no such recordation was authorized by
17 law. (See #6 at Ex. 19 for recording costs).

18        By stating in the 2/13/2009 letter that there was a Nevada Revised Statute that permitted the
19 recording of the Notice of Delinquent Assessment Lien and that Defendants were entitled to record
20 such a Notice, and by stating that should Defendants record the Notice of Delinquent Assessment Lien,
21 the cost to Plaintiff McCright would be $325.00 plus recording costs when no such costs were
22 permitted because the recording of the document was not authorized by Nevada Revised Statutes,
23 Defendants violated 15 U.S.C. § 1692e (false, deceptive, or misleading representations), 15 U.S.C. §
24 1692e(2) (false impression of the character, amount or legal status of a debt), 15 U.S.C. § 1692e(5)
25 (threatening to take an action which cannot be legally taken), 15 U.S.C. § 1692e(13) (false impression
26 that a document is legal process), and 15 U.S.C. § 1692f (use of unfair means to collect a debt). By
27 suggesting in the 2/13/2009 letter that the "Notice of Delinquent Assessment Lien" was a lien, when,

28

1   in fact, the document was not a lien, but merely a notice, Defendants violated 15 U.S.C. § 1692e, 15

2   U.S.C. § 1692f. By stating in the 2/13/2009 letter that a fee would be charged to "release" the Notice

3   of Delinquent Assessment Lien, when, in fact, the document was not a "lien" that needed to be or

4   could be "released" and no such fee was, therefore, required or permitted for such a "release," and

5   because Defendants charged $57.00 for recording the Notice of Delinquent Assessment Lien,

6   Defendants have violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(5), 15 U.S.C. § 1692e(13), 15 U.S.C.

7   § 1692f.

8        On March 3, 2009, Defendants recorded the document titled, "Notice of Delinquent

9   Assessment Lien" (#6 at Ex. 9). Because there is no provision at law which permits the public

10   recording or publishing of a "Notice of Delinquent Assessment Lien," and because Plaintiff McCright

11   did not authorize such recording, Defendants violated 15 U.S.C. § 1692d(3) (publication of a list of

12   consumers who allegedly refuse to pay a debt) and 15 U.S.C. § 1692c(2)     (communications with

13   persons other than consumer regarding the debt).

14        Thirdly, Defendants charged Plaintiff McCright $300.00 (raised to $450.00 by Defendants, see

15   #6 at Ex. 19) for a "Payment Plan Fee" for a payment plan Plaintiff McCright never agreed to. Three

16   times Defendants requested Plaintiff McCright execute the payment plan agreement and three times

17   Plaintiff McCright refused.   Nonetheless, on at least two different occasions Defendants notified

18   Plaintiff McCright that he was in "breach" of the payment plan which he never agreed to (#6 at Ex.

19   15 and Ex. 16).  Not only did Defendants charge Plaintiff McCright $450.00 for the non-existent

20   payment plan, but they also charged him $50.00 to send the "breach" letters for an alleged breach of

21   a payment plan agreement that Plaintiff McCright never agreed to. (See #6 at Ex. 19 for costs).

22        In short, even if collection fees were owed to Willow Tree HOA, which they are not (see Ex.

23   1 attached hereto, Willow Tree HOA's 10/8/2010 Letter,) the collection fees upon which Defendants

24   are foreclosing are  inaccurate and unlawful.  Defendants have no legal right to foreclosure upon the

25   Subject Property for the amount stated in the Notice of Foreclosure Sale. Thus, Plaintiff McCright has

26   a "probability" of success on the merits.

27

28

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

C. **PLAINTIFF WOULD SUFFER GREATER HARDSHIP IN THE LOSS OF HIS RESIDENCE THAN DEFENDANT COLLECTION AGENCY WOULD SUFFER IF THE FORECLOSURE WAS DELAYED PURSUANT TO A PRELIMINARY INJUNCTION .**

Given the serious nature of the repeated violations of the Fair Debt Collection Practices Act by Defendants and the claim by Willow Tree HOA that Plaintiff McCright is in good standing, the foreclosure of Plaintiff's residence on February 4, 2011, surely supports the position that the balance of hardships weigh more heavily upon Plaintiff McCright than the Defendant collection agency. Plaintiff McCright owes no money to Willow Tree HOA. Defendants are debt collectors with no contractual relationship with Plaintiff McCright. The only party, therefore, that Plaintiff McCright could possibly owe any money to is Willow Tree HOA, the very party which has stated that Plaintiff is in good standing. As Plaintiff McCright is paid current on any and all obligations it owes Willow Tree HOA, the foreclosure of his residence would be a great hardship. Without issuance of the preliminary injunction, Plaintiff McCright will lose his only real property asset. By issuing the preliminary injunction, the hardship to Defendants is negligible. They have charged inaccurate and unlawful fees and, by Willow Tree HOA's own admission, Plaintiff McCright owes nothing. Defendants will merely not get what they have no entitlement to anyway... the unlawful and inaccurate collection fees. The balance of hardship test weighs heavily in favor of Plaintiff McCright.

///

///

///

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

## IV.

## CONCLUSION

For the reasons cited in the Motion, Plaintiff McCright respectfully requests this Honorable Court to issue a preliminary injunction enjoining Defendants from foreclosing upon the Subject Property until further order of the Court.

Date this __13__ day of January, 2011.          ADAMS LAW GROUP, LTD.

JAMES R. ADAMS, ESQ.
Nevada Bar No. 6874
ASSLY SAYYAR, ESQ.
Nevada Bar No. 9178
8681 W. Sahara Ave, Suite 280
Las Vegas, Nevada 89117
Tel: 702-838-7200
Fax: 702-838-3636
james@adamslawnevada.com
*Attorneys for Plaintiffs*

PUOY K. PREMSRIRUT, ESQ., INC.
Puoy K. Premsrirut, Esq.
Nevada Bar No. 7141
520 S. Fourth Street, 2nd Floor
Las Vegas, NV 89101
(702) 384-5563
(702)-385-1752 Fax
ppremsrirut@brownlawlv.com
*Attorneys for Plaintiffs*

ADAMS LAW GROUP, LTD.
8681 W. SAHARA AVENUE, SUITE 280
LAS VEGAS, NEVADA 89117
TELEPHONE (702) 838-7200
FACSIMILE (702) 838-3636

**CERTIFICATE OF SERVICE**

I certify that I am an employee of Adams Law Group, Ltd., and that  I served the forgoing **PLAINTIFF TIMOTHY MCCRIGHT'S MOTION FOR PRELIMINARY INJUNCTION ON ORDER SHORTENING TIME; MEMORANDUM OF POINTS AND AUTHORITIES** on all parties to this action by:

| x | Placing an original or true copy thereof in a sealed enveloped place for collection and mailing in the United States Mail, at Las Vegas, Nevada, postage paid, following the ordinary business practices; |
|---|---|
|  | Hand Delivery |
|  | Facsimile |
|  | Overnight Delivery |
|  | Certified Mail, Return Receipt Requested. |

Patrick J. Reilly, Esq.
Holland & Hart, LLP
3800 H. Hughes Parkway, 10th Flr.
Las Vegas, Nevada 8919
Attorneys who previously consented to accept service in this action on behalf of Defendants

Nevada Association Services, Inc.
c/o David Stone, Resident Agent
6224 W. Desert Inn Road, Suite A
Las Vegas, Nevada 89146

David Stone
6224 W. Desert Inn Road, Suite A
Las Vegas, Nevada 89146

Dated this 13th day of January 2011.

_____
An Employee of Adams Law Group, Ltd

# EXHIBIT 1

# WILLOW TREE HOMEOWNERS ASSOCIATION

October 8, 2010

To Whom It May Concern:

This letter will confirm that Tim McCright, a homeowner at Willowtree Condominiums whose address is 1117-C Willow Tree, Las Vegas, Nevada 89128, is an owner in good standing with the Willowtree Homeowners Association. As of October 1, 2010, he has a zero balance in regard to his monthly assessments and/or any fines accrued.

If I can be of any further assistance, please do not hesitate to contact me.

Sincerely yours,

Marc S. Fineman, CM
Community Manager
Willowtree Homeowners Association
Marc@cmanevada.com
(o) 262.5860   (f) 262.5861

# EXHIBIT 2

April 2, 2009

Nevada Association Services

6224 W. Desert Inn Road

Suite A

Las Vegas, NV 89146


Re: 1117 Willow Tree Dr # C

   Willow Tree/Tim McCright

   Trustees Sale # N42934


I received a letter about a foreclosure sale? I spoke with your office and agreed to make payments. I am trying to get my account current. Willow Tree HOA cashed my check for $200.00 on March 13, 2009. To bring my account current I would like to make agreement of $50.00 a month toward the outstanding amount. I would also like to get a transaction history of payments.


I would like you to fax me back a signed agreement stating that you will not foreclose on my said property.


Thank you,

Tim McCright

EXHIBIT 3

April 12, 2009

To: Nevada Association Services

Re: 1117 Willow Tree Dr Unit C

Timothy McCright

I have requested a payment plan for my account. I still have not received this as of today. Please fax this to 702-487-6266 ASAP.

Thank you,

Timothy McCright

EXHIBIT 4

NAS

6224 W. Desert Inn Road, Suite A

Las Vegas, NV 89146

cc: Community Management


RE: 1117 Willow Tree Dr #C

Las Vegas, NV 89117

Timothy McCright


This is my second notice about a payment plan that I can afford. I have written and spoken to NAS and Community Management about my payment plan. I have been making payments in the amount of $50.00 plus my regular dues of $150.00 every month. I spoke to Russ Tisdale and Matt from Community Management and they agreed to this arrangement. All this confuses me; I do not know what type of communication your company has with Willow tree H.O.A or community management clearly it is lacking. I will speak to Russ and Matt and request that my account be removed from your company's collection list. I submitted a payment plan it was agreed to by both parties and I have kept to the agreement. What I would like to know from your company, is this shake down by your company to extract more fees yes or no.

# EXHIBIT 5

Timothy D. McCright
1117 Willow Tree Dr. #C
Las Vegas, NV 89128

January, 7th 2010

Subject
Payment schedule

To
Nevada Association Services
6224 W. Desert Inn Rd. #a Las Vegas, NV 89146

Willow Tree Home Owners Association
President: Russ Tisdale

Community Nevada Association Services
6224 W. Desert Inn Rd. #a Las Vegas, NV 89146
2500 Chandler Avenue
Las Vegas, NV 89120

We received your payment schedule and we reject it. You have failed to give
us a transaction history as we requested and you keep adding frivolous fees
that we disagree with. We sent in a payment schedule long ago to
Community Management Associates  that was verbally agreed to by Russ
Tisdale the President of Willow Tree H.O.A. and Matt at Community
Management Associates, since then we have been making good faith
payments. Your company on the other hand has added a mountain of
frivolous fees that we now believe far exceeds the amount of the actual debt,
and you have resisted our attempts to show a full accounting by producing a
transaction history or any type of financial history.

Sincerely

Tim McCright

EXHIBIT 6

TIMOTHY MCCRIGHT
1117 WILLOW TREE DR UNIT C
LAS VEGAS, NV 89128

94-72-1224

**567**

2/22 2010 Grand Teton
National Park

Pay to the order of *Willow Tree HOA* $392.50

*Five hundred ninety two Dollars 50/100* ——— Dollars

**BANK OF AMERICA**
ACH R/T 122400724

For *Paid in Full Past Dues* Tim

⑆122400724⑆ 501003821918⑈ 0567

---

No. 6 20 10

Received from *Tim McRight*
*1117 w/T C*
*Five Hundred Ninety Two 50/100* Dollars
For *Past Dues -owed*
*Pd in Full*
$ *392.50* *George Hammon*

EXHIBIT 7

# McCright, Tim
1117 Willow Tree Dr. Unit C

**Willowtree**

Account No.:

TS# N 42934

| Assessments, Late Fees, Interest, Attorneys Fees & Collection Costs *Dates of Delinquency:NAS Fee Only* | Amount Present rate | Amount Prior Rate | Amount Prior rate | Amount Prior rate | Amount Prior rate |
|---|---|---|---|---|---|
| Balance forward | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| No. of Months Subject to Interest | 0 | 0 | 0 | 0 | 0 |
| Interest due on Balance Forward | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Monthly Assessment Amount | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| No. of Months Delinquent | 0 | 0 | 0 | 0 | 0 |
| No. of Months Subject to Interest | 0 | 0 | 0 | 0 | 0 |
| Total Monthly Assessments due | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Late fee amount | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| No. of Months Late Fees Incurred | 0 | 0 | 0 | 0 | 0 |
| Total Late Fees due | 0 | 0.00 | 0.00 | 0.00 | 0.00 |
| Interest Rate | 0.00 | 0.12 | 0.12 | 0.12 | 0.12 |
| Interest due | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| pecial Assessment Due | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Special Assessment Late Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Special Assessment Months Late | 0 | 0 | 0 | 0 | 0 |
| Special Assessment Interest Due | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Misc Charge | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Mgmt. Co. Intent to Lien | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Audit Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Management Co. Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Demand Letter | 135.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Lien Fees | 325.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Prepare Lien Release | 30.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Certified Mailing | 72.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Recording Costs | 57.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Pre NOD Ltr | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Payment Plan Fee | 450.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Breach letters | 50.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| rsonal check returns | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Sub of Agent | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Collection Costs on Violations** | **0.00** | 0.00 | 0.00 | 0.00 | 0.00 |
| Subtotals | $1,194.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| Credit | Date | |
|---|---|---|
| | (0.00) | |
| | (0.00) | |
| | (0.00) | |
| | (0.00) | |
| | (0.00) | |
| | (0.00) | |
| | (0.00) | |
| | (0.00) | |
| | (0.00) | NAS FEE ONLY |
| | (0.00) | |
| | (0.00) | |
| NAS Fee Payments | (150.00) | |

**HOA TOTAL** — **$1,734.00**

"Nevada Association Services Inc. is a debt collector. Nevada Association Services, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose."

| Trustee Fees & Costs | Amount | | Attorneys Cre | Date | |
|---|---|---|---|---|---|
| | | | | | (0.00) |
| Trustee's Fees | 400.00 | | | | (0.00) |
| Trustee's Sale Guarantee | 290.00 | | Collection Cre | Date | |
| Posting/Publication | 0.00 | | | | (0.00) |
| Courier | 0.00 | | | | (0.00) |
| Postponement of Sale | 0.00 | | | | (0.00) |
| Conduct Sale | 0.00 | | | | (0.00) |
| Prepare/Record Deed | 0.00 | | | | (0.00) |
| (other) | 0.00 | | | | (0.00) |
| (other) | 0.00 | | | | (0.00) |
| (other) | 0.00 | | | | (0.00) |
| | | | | | (0.00) |
| TRUSTEE'S SUBTOTAL | $690.00 | | | | (0.00) |
| | | | | | (0.00) |
| | | | | | (0.00) |
| | | $1,734.00 | | | |
| TRUSTEE'S TOTAL | | | Collection Credits SubTotal | | $0.00 |

"Nevada Association Services Inc. is a debt collector. Nevada Association Services, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose."