UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

NICHOLAS OTOMO, an individual;
TIMOTHY MCCRIGHT, an individual,
on behalf of themselves and all those
similarly situated,

          Plaintiffs,

v.

NEVADA ASSOCIATION SERVICES,
INC., a Nevada corporation; and
DAVID STONE, an individual,

          Defendants.

2:10-CV-2199 JCM (GWF)

**ORDER**

Presently before the court is plaintiffs' motion for class certification. (Doc. #72). Defendants filed an opposition (doc. #77), to which the plaintiffs replied (doc. #81).[1]

**I.    Background**

On December 29, 2010, plaintiffs filed their first amended complaint. (Doc. #6). The complaint named two defendants: Nevada Association Services, Inc. ("NAS") and David Stone. (*Id.*). NAS is a collection agency that pursues past due assessments and charges from delinquent homeowners on behalf of Nevada homeowners' associations ("HOA(s)"). (Doc. #77, 2:19-20).

---

[1] Plaintiffs also submitted a supplemental exhibit (doc. # 82) to which defendants replied (doc. # 83). This exhibit is a copy of an agreement in *Jones Ebel v. Nevada Association Services, Inc.*, case # 2:11-cv-00963-KJD-NJK, in which defendant NAS admitted that the members of subclass A are appropriate for class action treatment. The court, however, does not find that agreement persuasive here for two reasons: (1) in *Jones Ebel*, plaintiffs only challenge NAS's initial collection notice, whereas here plaintiffs challenge defendants conduct based on five separate occasions; and (2) in *Jones Ebel*, plaintiffs challenge the content of the letter, whereas here plaintiffs challenge NAS's right to collect assessments on behalf of HOAs.

**James C. Mahan**
**U.S. District Judge**

Stone is the President of NAS. (*Id.* Ex. E, 2:8). Defendants employ a multi-step process to satisfy the debt and associated collection fees. Plaintiffs challenge NAS's business practice, arguing that NAS is not authorized to collect fees directly from the consumer and that by sending letters asking for the collection of those fees, NAS violates the consumers' rights under federal and state law.

The amended complaint alleges five causes of action against NAS: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Nevada Deceptive Trade Practices Act; (3) declaratory relief; (4) injunctive relief; and (5) negligence. (*See id.*). Claims one, three, and four respectively also name Stone. (*See id.*).

In plaintiffs' motion for class certification there are five proposed subclasses. (*See* Doc. #72). All five groups are divided based upon their correspondence with NAS. (*See generally* Doc. #72). Subclass A includes approximately 45,366 individuals who received an "initial demand letter." (*Id.* at 11-12). Subclass B includes approximately 35,966 individuals who received a "secondary demand letter." (*Id.* at 12). Subclass E includes the "at least 5,481 property owners," who received a "payment plan letter" followed by a "breach letter." (*Id.*). Subclass F includes approximately 31,513 individuals who received "foreclosure letters." (*Id.*). Lastly, Subclass H includes approximately 5,053 individuals who received notices of foreclosure sale. (*Id.* at 12-13).

The named plaintiffs, Nicholas Otomo and Timothy McCright, were both behind on their HOA payments which prompted NAS to contact them. (Doc. #77, 7). Over the span of approximately 21 months McCright received all the above listed correspondence. (*Id.*). Similarly, Otomo received all the correspondence except for the notice of foreclosure sale. (*Id.*).

**II.  Legal Standard**

A party seeking class certification bears the burden of demonstrating that all four prerequisites of Rule 23(a) and at least one criterion of Rule 23(b) are met. *Conn. Ret. Plans & Trust Funds v. Amgen. Inc.,* 660 F.3d 1170, 1175 (9th Cir. 2011). Subclasses are to be treated as their own class under Rule 23. Fed.R.Civ.P. 23(c)(5). The four prerequisites to class certification under Rule 23(a) are:

>(1) the class is so numerous that joinder of all members is impracticable;
>
>(2) there are questions of law or fact common to the class;
>
>(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>(4) the representative parties will fairly and adequately protect the interests of the class.

*Id.*

A class action "may [ ] be certified [only] if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. Sw. v. Falcon,* 102 S.Ct. 2364, 2372 (1982). "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Id.* at 160. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ. P. 23(b)(1–3).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010)

**III.   Discussion**

Plaintiffs argue that each subclass meets the requirements of Rule 23(a) and qualifies as a class under all three categories of Rule 23(b). (*See* Doc. #72). Defendants contend those assertions on all points except numerosity. (*See* Doc. #77). The court will address each requirement in turn.

. . .

**James C. Mahan**
**U.S. District Judge**

- 3 -

### A. Fed. R. Civ. P. 23(a)

#### i. Numerosity

Numerosity, the first prerequisite of class certification, requires that the class be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not. *See Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).

Here, numerosity is clearly met by all five subclass es. To illustrate, subclass H, the smallest proposed subclass, has over approximately 5,000 individuals (doc. #72, 12), an amount which surpasses the bounds of a practical joinder.

#### ii. Commonality

Commonality, the second prerequisite of class certification, requires that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The requirements of Rule 23(a)(2) have "been construed permissively," and just one common question of law or fact will satisfy the rule. *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir. 2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Thus, for purposes of Rule 23(a)(2), a perfect identity of facts and law is not required; relatively "minimal" commonality will do. *Id.* at 1019–20.

Plaintiff argues that all five subclasses are adequate on numerous grounds of both fact and law. (*See* doc. #72, 14-18). Defendant only contests Rule 23(a)(2) by blankly stating that plaintiffs "fail to meet the requirements of . . . (a)(2)(commonality)." (Doc. #77, 11:7-8).

The court finds that Rule 23(a)(2) is satisfied by plaintiffs. Stated simply, each subclass has a common question of whether members of the putative subclasses received the same correspondence from NAS, which is enough commonality to meet Rule 23(a)(2).

#### iii. Typicality

Typicality, the third prerequisite of class certification, requires that "the claims or defenses

**James C. Mahan
U.S. District Judge**

- 4 -

of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Admittedly, the '[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13. However, typicality, like adequacy, is directed to ensuring that plaintiffs are proper parties to proceed with the suit. "The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The typicality requirement demands that a named plaintiff's claims be "reasonably co-extensive with those of absent class members," although "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interests of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

Plaintiffs argue that McCright and Otomo's claims are typical of subclasses A, B, E, and F because each received an the requisite communication from NAS containing misleading statements. (Doc. # 72, 20:11-18). Plaintiffs also argue that McCright's claims are typical of subclass H because he received a notice of foreclosure sale from NAS containing misleading statements. (Doc. # 72, 20:18-20).

Defendants challenge the typicality of McCright's claims because he did not live in the property at the time he received communication from NAS–thus, the debt does not qualify as consumer "debt" pursuant to the FDCPA. Defendants also challenge the typicality of McCright's claims for subclasses A, B, E, and F as being time barred by the FDCPA statute of limitations.[2] Defendant contests both plaintiffs' claims' typicality because some putative class members have submitted claims to arbitration and mediation pursuant to NRS 38.310–which plaintiffs have not.[3]

---

[2] The statute of limitations for FDCPA actions is one year. 15 U.S.C. § 1692k.

[3] Under *Hamm v. Arrowcreek Homeowners Ass'n*, 183 P.3d 895 (Nev. 2008) and NRS 38.300, NRS 38.310's mediation or arbitration prerequisites are inapplicable if there is an immediate threat of irreparable harm or if the action relates to the title of the residential property. Here, some of the subclasses sufficiently implicate the title of residential property or involve an immediate threat of irreparable harm such that this limitation on commencement of a civil action does not apply. However, other subclasses do not fall within an exception and thus would be required to pursue mediation or arbitration before seeking relief in this court. Because this analysis goes to the merits of the named plaintiffs' claims and because the instant motion is denied on other grounds, the court does not find reason to set forth its analysis of

1   Defendants concede that Otomo's claims are within the statute of limitations and do not
2   challenge his typicality on any basis other than NRS 38.310.[4] Thus, the court finds that Otomo's
3   claims are typical of subclasses A, B, E, and F.

4   Defendants do not challenge whether McCright received communication under subclass H
5   within the statute of limitations. Thus, the court turns the whether McCright incurred a "debt" as
6   defined by the FDCPA. In order for McCright's FDCPA claim to be typical of subclass H, he must
7   be a "consumer" within the meaning of the statute. That is, McCright should not be subject to
8   individualized defenses as to whether he incurred a consumer "debt". "Debt" under the FDCPA
9   consists of any obligations arising from a transaction "primarily for personal, family, or household
10  purposes . . . ." 15 U.S.C. § 1692a(5).

11  Here, the court is only concerned with the typicality of McCright's FDCPA claim as to
12  subclass H. The court finds that there is insufficient evidence before it to make a determination of
13  whether McCright was living in the residence at the time he received the notice of foreclosure sale.
14  The court has only plaintiffs' counsel's assertion that McCright "was living in the residence at the
15  time he received the Notice of Foreclosure Sale . . ." (doc. # 81, 16:3-4), without any citation to the
16  record. *See U.S. v. Dunkel*, 927 F.2d 955 (7th Cir.1991)("Judges are not like pigs, hunting for truffles
17  buried in briefs."). Plaintiffs are required to lay out the evidence and pinpoint the exact portions that
18  support their argument. While the court would normally find that such an insufficiency in evidence
19  would warrant a hearing to obtain more information–the court's denial of class certification under
20  the Rule 23(b) makes this exercise unnecessary. On this basis, the court finds that McCright's claims
21  are not typical of subclass H.[5]

---

exhaustion here. Therefore, the court's finding as to typicality omits analysis as to the impact of NRS 38.310 on plaintiffs' claims in a putative class action.

[4] Addressed *supra* fn.2.

[5] The court acknowledges the parties' arguments as to when the FDCPA debt was incurred and its relevance to McCright's claims' typicality. As previously mentioned in footnote 2, because this analysis goes to the merits of the named plaintiffs' claims and because the instant motion is denied on other grounds, the court does not find reason to set forth its analysis as to when the debt must be incurred to qualify as a "debt" within the meaning of FDCPA.

**James C. Mahan**
**U.S. District Judge**

- 6 -

### iv. Adequate Representation

An adequate representative is one who will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee*, 61 S.Ct. 115, 120 (1940). A representative is adequate where: (1) there is no conflict of interest between the representative and her counsel and absent class members; and (2) the representative and her counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 120 (internal citations and quotations omitted). In practice, courts have interpreted this test to encompass a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992) (quoting *In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)).

#### a. Class counsel's adequacy

To be adequate, plaintiffs' counsel must be qualified, experienced, and generally able to conduct the proposed litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Defendants argue that class counsel are inadequate because of a conflict of interest (*i.e.*, financial stake in the outcome of the litigation) and previous disciplinary action. (Doc. # 77, 14). The court finds the alleged financial stake to be too tangential to draw an interference of impropriety. Further, any previous disciplinary action is not sufficiently related to lead this court to believe that counsel cannot adequately represent plaintiffs here.[6]

#### b. Class representatives' adequacy

Defendants challenge both plaintiffs' adequacy on the same grounds defendants challenge plaintiffs' claims' typicality. Plaintiffs argue that named plaintiffs "have a mutual interest in

---

[6] Defendants argue that counsel has been sanctioned for failure to bring actions under chapter 38 before the Nevada Real Estate Division in accordance with NRS 38.310. However, given the unique nature of class actions, the court does not find that this previous sanction to have any bearing on counsel's ability to represent the putative class here.

James C. Mahan
U.S. District Judge

- 7 -

establishing liability and obtaining relief because they suffered the same type of harm–namely, they were the recipients of false and misleading debt collection letters or notices by Defendant debt collectors." (Doc. # 72, 21:14-16). Plaintiffs also argue that there is no conflict of interest or antagonism between named plaintiffs and the putative subclasses they seek to represent.

Although the court has already found that McCright's claims are not typical of subclass H and therefore need not address whether he would adequately represent this subclass, the court takes this opportunity to identify a problem with this plaintiff's adequate representation.[7]

Plaintiffs are "the masters of their complaint"; and here plaintiffs have failed to carefully craft a class definition to include one of its proposed named plaintiffs–McCright. McCright does not appear to have "owned and resided in" the residential property at all times he received correspondence from NAS. *See Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231, 2250-51 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."). Thus, regardless if McCright's claims are the very same claims the proposed subclass seeks to bring–the question of whether McCright lived in the subject property during the time of the offending correspondence is relevant to whether this plaintiff can adequately represent the putative class members of subclass H. *See* § 21.222, Definition of Class, MANUAL FOR COMPLEX LITIGATION FOURTH, 270 (2004).

Simply put, a named plaintiff's non-inclusion in a class definition drafted by plaintiffs is of concern to the court. This demonstrates a possible conflict of interest between named plaintiff and absent class members of subclass H. *See Hanlon*, 150 F.3d at 120. While the court acknowledges this infirmity, defendants do not argue and the court finds neither a conflict of interest between plaintiffs and their counsel nor an inability to "pursue the action vigorously on behalf of the class." *Id.*

On this basis, the court finds that Otomo can adequately represent subclasses A, B, E, and F; and that McCright cannot adequately represent subclass H.

---

[7] The specific example is illustrative of internal inconsistency and procedural incoherency the court finds to be "too cumbersome" in order to certify the requested subclasses. (*See* doc. # 55, 42:10-11).

**James C. Mahan**
**U.S. District Judge**

- 8 -

**B.     Fed. R. Civ. P. 23(b)**

Again, in order to be certified as a class, in addition to satisfying the four requirements of 23(a), plaintiff must also satisfy either FRCP 23(b)(1), (2), or (3). Fed.R.Civ.P. 23.

**I.     Fed. R. Civ. P. 23(b)(1)**

A class action is certifiable under Fed. R. Civ. P. 23(b)(1) if prosecution of separate actions would create a risk of either:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

*Id.*

Plaintiffs seemingly argue under Fed. R. Civ. P. 23(b)(1)(A), that this litigation, if not a class, poses too great a risk of inconsistent or varying adjudications "with respect to individual members of the class." (Doc. #72, 23-24). Defendant counters that certification under Rule 23(b)(1) is improper because plaintiffs are seeking "primarily monetary relief." (Doc. #77, 3). Although plaintiffs seem to focus on 23(b)(1)(A), 23(b)(1)(B) will also be considered below.

Rule 23(b)(1)(A) exists to prevent the "'defendant by reason of the legal relations involved,'" to not be faced with, as a practical matter, two different courses of conduct. *Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1194 (9th Cir. 2001) (quoting *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir. 1973)). The phrase "incompatible standards of conduct" pertains to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Zinser,* 253 F.3d at 1193 (quoting 7A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1773 at 431 (2d ed. 1986) (footnote omitted). Certification under Rule 23(b)(1)(A) requires more "than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts." *Zinser,* 253 F.3d at 1193 (quoting FEDERAL PRACTICE AND

James C. Mahan
U.S. District Judge

- 9 -

1  PROCEDURE § 1773 at 429). Finally, certification under Rule 23(b)(1)(A) is not appropriate in an
2  action for damages. *Id.*

3       Certification is available under Rule 23(b)(1)(B) when the case involves a "'fund' with a
4  definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated
5  claims based on a common theory of liability, by an equitable, pro rata distribution." *Zinser*, 253
6  F.3d at 1197 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842 (1999)).

7       This court finds that certification under Rule 23(b)(1)(A) would be inappropriate since each
8  subclasses' monetary claims are preeminent. This is evidenced by plaintiffs seeking certification of
9  subclasses defined by conduct defendants have already perpetrated upon putative members. (*See* doc.
10 #72, 11-12). Thus, monetary relief is the main source of relief plaintiffs' seek. While declaratory
11 relief is plead as the third cause of action (doc. #6, 47), its presence cannot reasonably be believed
12 to make the monetary claims incidental. The fourth cause of action, injunctive relief, is only targeted
13 at sub-class H.[8] The injunctive relief is primarily targeted at enjoining defendant from moving
14 forward with the foreclosure of sub-class H member's homes. (*Id.* at 52). However, as plaintiff has
15 pointed out, these foreclosures only occur .00017 percent of the time. (Doc. #72, 7:26). Therefore,
16 even for subclass H, the only subclass named under both the third and fourth causes of action (*see*
17 doc. #6), monetary relief is the preeminent relief sought. This court cannot certify any of the
18 subclasses under Rule 23(b)(1)(A) since the claims under each subclass are primarily seek monetary
19 damages, and therefore, do not pose enough risk of creating incompatible standards of conduct for
20 defendants.

21      Additionally, this court finds that certification under Rule 23(b)(1)(B) would be inappropriate
22 since plaintiffs' recovery is not limited by a capped fund. Like the plaintiff in *Zinser*, who failed to
23 show that "assets potentially available to claimants are so limited that separate actions 'inescapably
24 will alter' the right of other claimants"; here, plaintiffs have not show that separate actions would
25 inescapably alter the rights of plaintiffs. 253 F.3d at 1197 (quoting Fed.R.Civ.P. 23(b)(1)(B)).

26

---

[8] The amended complaint also seeks injunctive relief as to subclasses D and G (doc. 6, 51); however, the motion for class certification does not seek certification as to these subclasses. (*See* doc. #72).

**James C. Mahan**
**U.S. District Judge**

- 10 -

### ii. Fed. R. Civ. P. 23(b)(2)

The second Rule 23(b) category provides that a class action is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2); *Zinser* 253 F.3d at 1195 ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive.").

Plaintiffs argue that Rule 23(b)(2) is appropriate since a "fundamental issue in this case is whether Defendants have a separate and independent right to charge collection fees directly to the homeowners if there is no privity of contract between the Defendants and the homeowners and where the HOAS have not actually incurred any collection cost from the Defendants." (Doc. #72, 24: 7-10). Defendants oppose plaintiffs' argument by analogizing the facts here to the recent Supreme Court case *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), in which certification under Rule 23(b)(2) was denied. (Doc. #77, 17-18). Plaintiffs contend that defendants' use of *Dukes* is misconstrued. (Doc. # 81, 23).

*Dukes* held that Rule 23(b)(2) cannot be used to certify a class, "where . . . the monetary relief is not incidental to the injunctive or declaratory relief." 131 S.Ct. at 2557. The Court avoided making a decision as to the "broader question" of whether or not 23(b)(2) could be used only for purely injunctive or declaratory claims. *Id.* However, the Court did decide that when a class' monetary claims involve individualized relief, even if incidental ("like the backpay at issue"), it cannot be certified under 23(b)(2). *Id.* at 2557, 2561. Thus, defendant's characterization and use of *Dukes* was correct. (*See* doc. #77, 17-18).

As discussed earlier the court finds that the focus of each subclass is monetary damages not injunctive or declaratory relief. Thus, each subclass fails certification under Rule 23(b)(2) since their monetary claims are more than incidental.

### iii. Fed. R. Civ. P. 23(b)(3)

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements." *Amchem Products*, 117 S. Ct. 2231, 2245-46. First, "common questions must 'predominate over any

James C. Mahan
U.S. District Judge

- 11 -

1 questions affecting only individual members.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed.R.Civ.P.
2 23(b)(3)). Second, "class resolution must be 'superior to other available methods for the fair and
3 efficient adjudication of the controversy.'" *Id.* (quoting Fed.R.Civ.P. 23(b)(3)).

### a.     Predominance

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). The predominance analysis of Rule 23(b)(3) is not identical to or synonymous with the commonality analysis in Rule 23(a)(2). "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "Even if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding." *Amchem*, 117 S. Ct. 2231, 2250. "The party seeking class certification, bears the burden of showing that common questions of law or fact predominate." *Zinser,* 253 F.3d at 1188 (citing *Hanon,* 976 F.2d at 508).

Plaintiffs commit most of their Rule 23(b)(3) arguments to why the class is the superior method in this instance. (*See* doc. #72 25-27). Plaintiffs do, however, set forth eight main points as to why common questions of law and fact predominate. (Doc. #72, 25-26, 14-18 (latter span of pages summarizing each subclass' common questions of law and fact). Defendants raises\ at least seven issues as to why common questions of law and fact do not predominate. (Doc. #77, 19-22). Below the court analyzes those arguments the court finds most persuasive.

First, defendants point out potential statute of limitations problems. (Doc. #77, 20); 15 U.S.C.A. §1692k(d). In response, plaintiffs' reply actually reiterates the potential problems the one year FDCPA statute of limitation could create. (*See* doc. #81, 27). Each subclass would, in essence, break into two distinct groups: (1) group that would have claims under FDCPA and all the other actions; and (2) a group that would not have a claim under the FDCPA because the putative class members are barred by the statute of limitations.

. . .

**James C. Mahan**
**U.S. District Judge**

- 12 -

1  Second, defendants claim that this court would have to conduct individual investigations as to whether each claimant under the FDCPA has the proper type of "debt" for bringing a claim. As previously discussed, the FDCPA is clear that it only applies to transactions "primarily for personal, family, or household purposes . . ." 15 U.S.C. §1692(a)(5); *see also Bloom v. I.C. System, Inc.,* 972 F.2d 1067, 1068 (9th Cir. 1992). Further, *Bloom* makes it clear that discovering the true purpose of a transaction is paramount in determining whether or not it was a transaction for business purposes or personal purposes. *See* 972 F.2d at 1068-69. *Bloom* went as far to say that a case-by-case analysis is required in order to determine whether a transaction is actually for business or personal purposes. *Id.* (citing *Thorns v. Sundance Properties,* 726 F.2d 1417, 1419 (9th Cir. 1984). Plaintiffs argue that subclasses' definitions solves this problem.[9] (Doc. #81, 27:11). However, owning or residing in the property, whether past or present, does not answer the question as to whether the home was initially purchased for personal or business purposes. One could have easily purchased the home as an investment property, then lived in the home, and now currently rent it out again. This hypothetical putative class member would require individual investigation to determine the nature of the transaction meet and would likely fail to have a claim under the FDCPA.

Third, defendants argue that intent is an individualized issue, and defendants' intent to foreclose would have to be analyzed on a person-by-person basis.[10] (Doc. #77, 22). Plaintiffs argue that intent is not an obstacle as the low foreclosure rate by defendants is telling of their true intent. Plaintiffs cites to the Fourth Circuit case *United States v. Nat'l Fin. Services, Inc.*, as a guidepost. (Doc. #81, 27-28); 98 F.3d 131 (4th Cir. 1996) (affirming civil penalties for violations under the FDCPA). While this court at this stage declines to issue an opinion as to the merits of the intent to foreclose by defendant, it does recognize the differences between the facts before it and those presented in *Nat'l Fin. Services*.

. . .

---

[9] For example, plaintiffs argue that subclass A says "all natural persons who *own and reside in, or owned and resided in homes located in HOAS . . .*" (Doc. #72, 11) (emphasis added).

[10] This consideration would apply to sub-classes F and H. (Doc. #72, 16:26, 17:21).

James C. Mahan
U.S. District Judge

In *Nat'l Fin. Services*, the court's finding that defendants were liable under the FDCPA, due to a lack of intent to follow through on threats of litigation appeared to be based on four factors. *See* 98 F.3d at 131. First, defendant National Financial Services had no internal procedure for filing a lawsuit. *Id.* at 136. Second, the evidence and testimony showed that defendant Frank Lanocha had no intention of filing a lawsuit. *Id.* at 137. Third, defendant Lanocha had not filed one lawsuit during the time period in question,[11] and exercised no judgment in regards to each threatening letter. *Id.* at 138. Lanocha did not see the letters, sign the letters, or know the identities of their recipients. *Id.* Lastly, while not as explicit, following through on the threats of litigation would result in lawsuits seeking an average of a $20 debt. *Id.* at 132. This, financially speaking, seemed impractical. *Id.* at 136.

Here, none of these factors are clearly shown by plaintiffs. Defendants have foreclosed before, thus defendants presumably have an internal procedure for foreclosure. The evidence here is not as strong as in *Nat'l Fin. Services* that there was no intention to follow through on the threatened action. While defendants foreclosing on property was rare, it was not as rare as *Nat'l Fin. Services* defendants bringing a lawsuit. Finally, foreclosure, on its face, seems more financially practical, and thus likely, than suing over a $20 debt.

These three concerns coupled with some of the earlier mentioned issues, like exhaustion of administrative remedies, *supra* III.A.iii.n.2, are enough for the court to find that common questions of law and fact do not predominate over individual questions. *See* Fed.R.Civ.P. 23(b)(3). Too much individualized investigation of both questions of law and fact exist. Therefore, the court finds that all five subclasses lack the cohesiveness to warrant adjudication by representation. *See Stearns*, 655 F.3d at 1019.[12]

. . .

---

[11] Prior to the time period in the lawsuit, defendant Lanocha had sued merely 15 people out of millions of sent letters. *Nat'l Fin. Services*, 98 F.3d at 138.

[12] The court notes that upon initial impression it felt that class treatment here would "too cumbersome," "the questions . . . too diverse," and that "everybody [would] have a different story." (Doc. #52, 42). After considering this motion and the evidence properly before the court, the court finds that its initial impression of the circumstances presented here to be correct.

### b. Superiority

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d 1023 (citing FEDERAL PRACTICE AND PROCEDURE § 1779). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "A class action is the superior method for managing litigation if no realistic alternative exists." *Id.*

"In determining superiority, courts must consider the four factors of Rule 23(b)(3). A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190. Those four factors are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action

While some of the above listed factors weigh in favor of class certification, the likely difficulties in managing the class action outweigh. This court finds that due to the lack of predominance of common issues of fact and law, the five proposed subclasses are not the superior method to adjudicate plaintiffs' claims.

## IV. Conclusion

In conclusion, this court finds it appropriate to deny plaintiff's motion for class certification as to all five subclasses.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 15 -

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs' motion for class certification (doc. #72) be, and the same hereby is, DENIED.

DATED March 25, 2013.

_____
UNITED STATES DISTRICT JUDGE